UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**BRITTNEY ABDELHAK** and **BRITNEY PARKERSON**, individually, and on behalf of others similarly situated,

      Plaintiffs,

vs.

**KELLY SERVICES, INC.**,
a Michigan corporation

      Defendant.

Case No.

Hon.

_____

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, BRITTNEY ABDELHAK and BRITNEY PARKERSON, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective/Class Action Complaint against Defendant, KELLY SERVICES, INC., and state as follows:

### INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, Brittney Abdelhak and Britney Parkerson ("Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant, Kelly Services, Inc. (hereinafter referred to as "Defendant"), arising from Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation

1

of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* the Ohio Minimum Wage Fair Standards Act, Ohio Rev. Code § 4111.01 *et seq.* ("OMFWSA") the Ohio Prompt Pay Act, ORC 4113.15 ("OPPA"), Article II, Section 34a of the Ohio Constitution, and common law.

2.      Plaintiffs and the putative collective members consist of current and former trainers of call center agents or similar positions ("Trainers" or "Plaintiffs"), who were compensated on an hourly basis.

3.      Defendant contracted with Apple, Inc. to provide remote call center agent training. In what is called the "Apple Project," Defendant's Trainers provide virtual training and instruction to remote call center agents. Trainers teach the agents through daily classes focused on providing AppleCare support to Apple, Inc. customers.

4.      However, throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Trainers for all pre-, mid-, and post-shift off-the-clock work performed as part of the Apple Project.

5.      In particular, Defendant required its Trainers to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers and logging into numerous software programs. The Trainers only clocked in and received compensation *after* this preliminary work was completed, though they were required

2

to perform this work in order to be ready to begin teaching when their scheduled trainings began.

6.     A Trainer's failure to be logged-in prior to the scheduled training (or when the training resumed after meal periods) could result in poor performance evaluations, warnings, discipline, and possibly termination.

7.     In addition to this pre-shift work, Defendant also required its Trainers to perform unpaid mid-shift work during their unpaid meal periods.  The Trainer's duties performed during their unpaid meal periods included similar login procedures and also included unpaid meal periods of less than 20 minutes. 29 C.F.R. § 785.19(a); *see also* 29 C.F.R. § 785.18 (rest periods of 20 minutes or less are compensable time).

8.     Additionally, Defendant required its Trainers to perform numerous mandatory post-shift tasks, such as closing out and shutting down programs, running and notating attendance reports, and other administrative duties.

9.     The Trainers routinely worked 40 hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, even those Trainers who were scheduled and paid for only 40 hours per week, actually worked over 40 hours per week without the required overtime premium for hours worked over 40 per week.

10.    Defendant, through its managers, had actual and constructive

knowledge that its Trainers were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Trainers to complete this unpaid work.

11.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Trainers, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2 (a copy of which is attached as ***Exhibit A***).

12.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails."  See *Id*., at p. 2. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

13.     Defendant's practice of failing to compensate its Trainers for all hours worked violated the Trainers' rights under the FLSA.

14.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly call center trainers who worked for Defendant and who were assigned to work on its Apple, Inc. account at any time during the past three years.*

15.     Defendant is liable for its failure to pay its Trainers for all work performed, and at the appropriate overtime rate for hours worked in excess of 40 per week.

16.     Trainers who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-, mid-, and post-shift work performed for Defendant, and compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

18.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court

of competent jurisdiction."

19.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's Trainers engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

20.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts.

21.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located within the State of Michigan, because it conducts business within the State of Michigan, and because it is registered with the Michigan Department of Licensing and Regulatory Affairs.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## **PARTIES**

23.    Plaintiff Brittney Abdelhak is a resident of Bryan, Ohio, who has worked for Defendant as a Trainer since November 2017.  Ms. Abdelhak signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit B*.

24.    Plaintiff Britney Parkerson is a resident of Clinton, Maine, who has worked for Defendant as a Trainer since March 2019.  Ms. Parkerson signed a

consent form to join this lawsuit, which is attached to this Complaint as ***Exhibit C***.

25.     Additional putative Collective members were or are employed by Defendant as hourly call center Trainers throughout the country during the past three years and their consent forms will also be filed in this case.

26.     Defendant Kelly Services, Inc., is a Delaware corporation headquartered in Troy, Michigan.  Defendant is licensed to do business in the State of Michigan and its registered agent for service of process in Michigan is The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

## GENERAL ALLEGATIONS

27.     According to its website, Defendant "Kelly Services, Inc.  (NASDAQ: KELYA, KELYB) and its subsidiaries, offer a comprehensive array of outsourcing and consulting services as well as world-class staffing on a temporary, temporary-to-hire, and direct-hire basis. Kelly® has a role in managing employment opportunities for more than one million workers around the globe by employing 550,000 of these individuals directly with the remaining workers engaged through its talent supply chain network of supplier partners.  Revenue in 2014 was $5.6 billion."[1]

28.     Defendant offers call center services through a program called

---

[1] *See* http://www.kellyservices.com/Global/AboutUS/ (last visited October 19, 2022).

KellyConnect®, which is a comprehensive call center solution for its customers. Through KellyConnect, Defendant employs call center agents in a number of different environments (*e.g.*, brick-and-mortar sites and on-site at its clients' locations), but predominantly employs them in the virtual (at-home) call center environment.[2]

29.    In conjunction with Defendant's call center services, Defendant's KellyConnect® program also provides virtual training for its call center agents through remote training processes and modules. Defendant's customers contract with Defendant to provide call center agent training, where "Kelly Connect's learning management process delivers tailor-made education for ongoing quality effectiveness."[3]

30.    Defendant contracted with Apple, Inc. to provide remote call center agent training. In what is called the "Apple Project," Defendant's Trainers provide virtual training and instruction to remote call center agents. Trainers teach the agents through daily classes focused on providing AppleCare support to Apple, Inc. customers. Each of Defendant's training classes consist of varying curriculum that range from three days to three weeks long.

---

[2] *See* http://www.kellyservices.us/US/KellyConnect-WorkAtHome/ (YouTube video) (last visited October 19, 2022).

[3] *See* https://pi.kellyservices.us/find-talent/solutions/kelly-connect-contact-center-outsourcing/ManagedSolutions/LearningManagement/ (last visited October 19, 2022).

31.     Defendant does not compensate its Trainers for all work performed, including work performed at the beginning of each shift in connection with starting and logging into various computer programs and applications; during each shift in connection with logging in and also due to technical issues; and subsequent to each shift in connection with shutting down and logging out of various computer programs and applications, as well as other administrative tasks associated with Trainer's job duties. Defendant's compensation policies result in Trainers not being paid for all time worked and for all of their work, including overtime, in violation of the FLSA and state contract law.

32.     Defendant's Trainers use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities. These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

33.     All of Defendant's Trainers in the Apple Project perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications.

34.     Defendant's Trainer jobs are non-exempt positions that typically pay a few dollars more than the federally mandated minimum wage.

35.     Plaintiff Abdelhak is employed by Defendant as a Trainer on Defendant's Apple Project team in Bryan, Florida.

36.     Plaintiff Parkerson is employed by Defendant as a Trainer on Defendant's Apple Project team in Clinton, Maine.

37.     Defendant typically schedules its Trainers to work 9.5 hour shifts (or longer), five days per week, with a scheduled 60-minute unpaid meal period each shift. Additionally, Defendant gives Trainers two paid 15-minute breaks per day.

38.     Defendant compensated its Trainers on an hourly basis and classified them as non-exempt employees under the FLSA.

39.     Throughout their employment with Defendant, the named Plaintiffs were full-time Trainers who worked remotely on Defendant's Apple Project team, regularly worked 40 hours per week, and earned in excess of $20 per hour.

40.     Throughout their employment with Defendant, Plaintiffs' job duties while working in the Apple Project included teaching and training call center representatives on fielding inbound calls and performing a wide range of AppleCare support services to callers with questions.

## Pre-Shift Work

41.     Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Trainers' job performance.

42.     Defendant's attendance/schedule adherence policies required Trainers to arrive 30 minutes prior to their scheduled classroom start time.  During that 30 minutes, Trainers were required to check in with their team lead, and then set up and

10

prepare their classroom for the day. While Trainers were compensated for this 30 minutes, this allotted time was not enough time to accomplish all of the tasks needed to be ready to teach at the scheduled start time.

43.    Throughout their employment with Defendant, Plaintiffs and other Trainers were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

44.    Upon arriving to their home computer, Defendant's Trainers were required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform their work.

45.    The pre-shift boot-up and login process generally consisted of the following steps:

   a.    The Trainers woke up their computer;

   b.    After waiting for the computer to boot up, the Trainers were prompted to login and enter their username and password;

   c.    After the Trainers were logged in, they began the required process to open, enter their assigned login credentials, and access the necessary computer applications (*e.g.*, Microsoft Outlook, Microsoft teams, Salesforce, Sharepoint, AppleLearn, Core, Keynote, download and open lesson plans in Preview, Adobe Connect, Notes application, VPN for Kelly Services, and Apple Connect VPN, etc);

   d.    After the Trainers completed the required login process, they would check in with their supervisor and begin preparing to teach that day's class.

46.     The boot-up and login process described above took substantial time on a daily basis, ranging from 15-30 minutes per shift, or more, depending on how fast/slow the computers were operating.

47.     To the extent Defendant allowed its Trainers to clock in a certain amount of time before the start of their classes (*e.g.*, up to 30 minutes) to allow for the boot-up and login process, this grace period was often exceeded by the amount of time it *actually* took Trainers to complete the process.  As a result, the Trainers still performed off-the-clock work for which they were not compensated.

48.     The Trainers also frequently encountered technical problems while performing this boot-up and login process which often caused the process to take an extraordinary amount of time.

49.     In order to be prepared to teach each day's class, Trainers are typically "conditioned" to be at their computers 15-30 minutes prior to the required shift start time in order to ensure that all of the required systems were operational ahead of the log-in time.

50.     On average, at least 1-2 times per week, Defendant's systems would fail and require an additional 15-30 minutes to boot-up. To avoid this, at the end of their shifts, Trainers would put their computers to "sleep," rather than shut them down, which would allow Trainers to simply "wake up" their machines in the morning prior to teaching class.  However, the computers would routinely shut down

on their own or restart entirely, requiring an extra boot-up process. As Trainers are only paid once they log in into the computer software, this process often resulted in Trainers being late to work and losing out on pay.

51.     Due to these technological failures, Trainers would typically would have, at minimum, 15 minutes of unpaid time per day due to having to log-in early, prior to their shifts, to make sure their computers were operational and the systems were functioning properly prior to teaching a class. Defendant's Trainers did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiffs and all other Trainers worked off-the-clock for at least 15-30 minutes (or more) before each shift for which they were never compensated.

52.     If Trainers arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be ready to teach their class when their scheduled shifts began, and they would therefore receive poor performance evaluations, warnings, discipline, and possibly face termination.

53.     Moreover, Trainers would lose an additional 15-20 minutes per week due to systems issues that would prevent them from logging in at the required start time.

**<u>Mid-Shift Work During Unpaid Meal Periods</u>**

54.     Defendant provided its Trainers with a scheduled 60-minute unpaid

meal period during each work shift.

55.     However, Defendant also required its Trainers to perform off-the-clock work during these unpaid meal periods, including returning from the 60-minute meal period approximately 5-10 minutes early in order to have enough time to log back in prior to resuming their shifts.  This process was similar to the pre-shift login process described above (albeit abbreviated), and this time also went unpaid.

56.     Additionally, while Defendant told Trainers they were given two paid 15-minute breaks per day, Trainers would often have to return early from their breaks to log-in to their classrooms.

57.     Moreover, Trainers were required to perform additional tasks during their meal and break periods, such as updating attendance, loading content for lesson plans, setting up breakout rooms for activities, preparing for exam administration, and checking e-mails.

58.     Due to these issues, Trainers would work through, on average, 10-15 minutes per day of their scheduled break periods.

59.     According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal."

(*Exhibit A*, Fact Sheet #64 at p. 2).

## Post-Shift Work

60.     Following their shift, Trainers were required to complete, at minimum, 15 minutes per day of unpaid work.

61.     Following the conclusion of a day's class, Trainers had several tasks to complete each evening, such as closing out the virtual classroom, running an Adobe Attendance Report, notating each module that each person missed that day, inputting exam scores, sending e-mails regarding make-up sessions for absent Agents, and then finally closing out all applications and putting their computers to sleep.

## Technical Issues

62.   Additionally, at periodic times both prior to or during their work shifts, Plaintiffs are disconnected from Defendant's computer systems and/or software programs/applications.

63.   Pursuant to Defendant's policies, Plaintiffs and the putative Class are required to place a telephone call to Defendant's technical support line when experiencing technical issues.

64.   Defendant fails to pay Plaintiffs and its Trainers for any time they spend disconnected from their classroom, even if they spend time dealing with pre- or mid-shift technical issues. Additionally, Trainers are not paid during the time they spend speaking with a member of Defendant's technical support team.

15

65.     Consequently, Defendant fails to pay Plaintiffs and its Trainers' for:

  a.      Time spent on hold waiting to speak to a member of Defendant's technical support team – which often times takes 10 to 15 minutes or longer;

  b.      Time spent waiting for a return call from a member of Defendant's technical support team – which often times takes 3 to 4 hours or longer;

  c.      Any time spent dealing with the technical issue where the Trainer is not connected and teaching a class; and

  d.      Time spent performing start-up and log-in procedures once the technical issue is resolved.

66.     The unpaid time Plaintiffs and the putative Class spend in connection with technical issues directly benefits Defendant and this process is an essential part of Plaintiffs' job responsibilities as Trainers.

67.     Defendant's technical downtime compensation policies result in Plaintiffs and the putative Class being withheld substantial compensation on a daily and weekly basis. On average, Plaintiffs and Trainers would each lose 15-20 minutes of compensation per week due to technical issues.

68.     Defendant knew or could have easily determined the amount of unpaid time that its Trainers spend in connection with technical issues and could have paid the employees for this time, but did not.

69.     Defendant knew or could have easily determined how long it takes for its Trainers to complete the pre-shift and mid-shift start-up and log-in process, and

16

the post-shift log-out process, and Defendant could have properly compensated Plaintiffs and the putative Class for the off-the-clock work they performed, but did not.

70.   The pre-, mid-, and post-shift off-the-clock time worked by Defendant's Trainers directly benefitted Defendant and the processes were an integral and indispensable part of the Trainers' job responsibilities.

71.   Because Defendant's Trainers typically worked scheduled shifts of at least 40 hours per week, their required pre-, mid-, and post-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

72.   Defendant had express and constructive knowledge that:

   a. its Trainers began the pre- and mid- shift boot-up and login process while off-the-clock in order to make sure they were prepared to teach, and clocked in on time;

   b. its Trainers frequently experienced technical problems with their computers during the boot-up and login process;

   c. its Trainers took unpaid meal periods;

   d. its Trainers performed mid-shift off-the-clock work during those unpaid meal periods; and

   e. its Trainers performed post-shift off-the-clock work in order to accomplish their daily job duties.

73.   Defendant's policies and practices discouraged its Trainers from recording all time worked.

74.   Despite having express and constructive knowledge of its Trainers' pre-

17

, mid-, and post-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Trainers. *Craig v. Bridges Bros. Trucking LLC,* 823 F.3d 382 (6th Cir. 2016) (citing *White v Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012).

75. The unpaid time Plaintiffs and the putative Class spend starting up, logging in, dealing with technical issues, and performing administrative tasks pre-, mid-, and post-shift directly benefits Defendant. These processes are an essential part of Plaintiffs' jobs responsibilities as Trainers.

76. Defendant is a leader in the field of call center services and knew or should have known that Plaintiffs and other Trainers' time spent starting up, logging in to and logging out of Defendants' computer systems, servers, and programs, and time spent in connection with technical issues, is compensable under the FLSA and state contract law.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

77. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly call center trainers who worked for Defendant and who were assigned to work on its Apple, Inc. account at any time during the past three years.*

 (hereinafter referred to as the "Collective"). Plaintiffs reserve the right to amend this definition if necessary.

78.   Excluded from the Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

79.   At all relevant times, Defendant was an "employer" and Defendant directed and directly benefitted from the off-the-clock activities performed by its Trainers.

80.   At all relevant times, Plaintiffs and the Class members were non-exempt hourly employees, subject to the requirements of the FLSA.

81.   At all relevant times, Defendant controlled its Trainers' work schedules, duties, protocols, applications, assignments and employment conditions.

82.   At all relevant times, Defendant was able to track the amount of time its Trainers spent booting up and logging into Defendant's computer network and software programs; however, Defendant failed to document, track, or pay its Trainers for the off-the-clock work they performed.

83.   At all relevant times, Defendant's policies and practices deprived its Trainers of overtime wages owed for the pre-, mid-, and post-shift activities they performed off-the-clock.

84.   With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).  The group of employees on behalf

of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

85.     The employment relationships between Defendant and every proposed Collective member are the same and may differ only by name, location, and rate of pay.  The key issues – the amount of uncompensated off-the-clock time owed to each employee – do not vary substantially among the proposed Collective members.

86.     The key legal issues are also the same for every proposed Collective member:

A. Whether the 15-30 minutes (or more) of required daily pre-shift off-the-clock time amounted to compensable overtime under the FLSA;

B. Whether the 15-25 minutes (or more) of required daily mid-shift off-the-clock time amounted to compensable overtime under the FLSA;

C. Whether the 15-30 minutes (or more) of required daily post-shift off-the-clock time amounted to compensable overtime under the FLSA;

D. Whether the 15-20 minutes (or more) of required weekly mid-shift off-the-clock time lost due to technical issues amounted to compensable overtime under the FLSA; and

E. Whether Defendant fulfilled its recordkeeping obligations under the FLSA.

87.     Plaintiffs estimate that the proposed Collective, including both current and former Trainers over the relevant period, will include over 100 current and

former employees.  The precise number of Trainers should be readily available from a review of Defendant's personnel and payroll records.

88.    Pursuit of this action on a collective basis will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the proposed Collective members.

89.    Accordingly, the Court should conditionally certify the proposed Collective for purposes of authorizing a written notice regarding the pendency of this collective action to be sent to the proposed Collective members so they can learn about this action and exercise their right to opt-in, if they so desire.

90.    Plaintiffs should be permitted to serve as representative of those who consent to participate in this collective action.

## <u>RULE 23 OHIO CLASS ACTION ALLEGATIONS</u>

91.    Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly call center trainers who worked for Defendant and who were assigned to work on its Apple, Inc. account at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Ohio Class").  Plaintiffs reserve the right to amend this definition if necessary.

92.    The members of the Rule 23 Ohio Class are so numerous that joinder of all Rule 23 Ohio Class members in this case would be impractical.  Plaintiffs

reasonably estimate that there are dozens of Rule 23 Ohio Class members. These

Class members should be easy to identify from Defendant's computer systems and

electronic payroll and personnel records.

93. There is a well-defined community of interest among Rule 23 Ohio

Class members and common questions of law and fact predominate in this action

over any questions affecting individual members of the Rule 23 Ohio Class. These

common legal and factual questions include, but are not limited to, the following:

A. Whether the pre-shift time that Rule 23 Ohio Class members spend on boot-up/login activities prior to "clocking in" for each shift is compensable time;

B. Whether the time that Rule 23 Ohio Class members spend on work activities during their unpaid meal periods, as well as unpaid break periods, such as logging back into computer systems and clocking in is compensable time;

C. Whether the time that Rule 23 Ohio Class members spend on work activities following their shift, such as administrative duties and logging out of their systems, is compensable time;

D. Whether the time that Rule 23 Ohio Class members spend attempting to resolve technical issues is compensable time; and

E. Whether Defendant's failure to pay the Rule 23 Ohio Class members for this pre-, mid-, and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

94. Plaintiffs' claims are typical of those of the Rule 23 Ohio Class in that

they and all other Rule 23 Ohio Class members suffered damages as a direct and

proximate result of the Defendant's common and systemic payroll policies and

practices.  Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Ohio Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Ohio Class members.

95.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Ohio Class and they have retained counsel who are qualified and experienced in the prosecution of class actions involving the Ohio wage/hour statutes. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Ohio Class.

96.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is not economically feasible for Rule 23 Ohio Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts.

97.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with

relative ease.

98.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

99.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Ohio Class and declaratory relief is appropriate in this case with respect to the Rule 23 Ohio Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

100.    Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly call center trainers who worked for Defendant and who were assigned to work on its Apple, Inc. account at any time during the past three years.*

 (hereinafter referred to as the "Collective").  Plaintiffs reserve the right to amend this definition if necessary.

101.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate that there are over 100 Rule 23 Nationwide Class

members.  The precise number of Rule 23 Nationwide Class members should be readily available from a review of Defendant's personnel and payroll records.

102.   There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions include, but are not limited to, the following:

A. Whether the pre-shift time that Rule 23 Nationwide Class members spend on boot-up/login activities prior to "clocking in" for each shift is compensable time;

B. Whether the time that Rule 23 Nationwide Class members spend on work activities during their unpaid meal periods, as well as unpaid break periods, such as logging back into computer systems and clocking in is compensable time;

C. Whether the time that Rule 23 Nationwide Class members spend on work activities following their shift, such as administrative duties and logging out of their systems, is compensable time;

D. Whether the time that Rule 23 Nationwide Class members spend attempting to resolve technical issues is compensable time; and

E. Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre-, mid-, and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

103.   Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies

and practices.  Plaintiffs' claims arise from the same policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

104.   Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and they have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

105.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

106.   This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with

relative ease.

107.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

108.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, et seq. – FAILURE TO PAY OVERTIME

109.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

110.   At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, et seq.

111.   Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

112.   At all times relevant to this action, Plaintiffs and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

113.    Plaintiffs and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

114.    Plaintiffs and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

115.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

116.    At all times relevant to this action, Defendant required Plaintiffs and the proposed Collective members to regularly perform 15-30 minutes or more of daily pre-shift computer boot-up and login time per shift, 15-25 minutes or more daily mid-shift, 15-30 minutes or more daily post-shift, as well as perform tasks for 15-20 minutes per week to resolve technological issues, but failed to pay these employees the federally mandated overtime compensation for all services performed.

117.    All of the off-the-clock worked performed by Plaintiffs and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

28

118.   In the aggregate, the amount of Plaintiffs' and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

119.   In workweeks where Plaintiffs and the proposed Collective members worked 40 hours or more, the uncompensated pre-, mid-, and post-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay.  29 U.S.C. § 207.

120.   Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Trainers to complete the pre-shift boot-up and log-in process and the mid-shift login process, the tasks associated with resolving technological issues, as well as the post-shift administrative tasks, and Defendant could have properly compensated Plaintiffs and the proposed Collective members for the work they performed, but did not.

121.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiffs and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

## COUNT II
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 211, et seq., FAILURE TO MAINTAIN REQUIRED RECORDS

122.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

123.   The FLSA requires all employers to keep all payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees).  See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, et seq.

124.   As an employer, Defendant is subject to the FLSA's recordkeeping requirements.

125.   Defendant's obligations were to maintain and preserve payroll or other records containing, without limitation, the total hours actually worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R § 516.2.

126.   Upon information and belief, Defendant maintained corporate policies and/or practices of evading pay for its non-exempt employees by failing to track, and maintain records of, their actual work time.

127.   Defendant failed to maintain and preserve accurate timesheets and payroll records in connection with Trainers' employment as required by 29 C.F.R § 516.2.

128.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact

performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

129.   The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id*.

130.   As a result of Defendant's recordkeeping violations, Plaintiffs seek a declaratory judgment and order that the *Anderson* burden-shifting framework applies in this case, along with all other relief just and appropriate in the circumstances.

**COUNT III**
**(Rule 23 Ohio Class Action)**
**VIOLATIONS OF THE OHIO MINIMUM FAIR WAGE STANDARDS**
**ACT, ORC Ann. 4111.02, ORC Ann. 4111.03(A).**
**(Brought by Plaintiff Brittney Abdelhak)**

131.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

132.   At all times relevant, Plaintiff Abdelhak and Rule 23 Ohio Class members were employed by Defendant within the meaning of the Ohio Minimum Fair Wage Standards Act (OMFWSA) and were not exempt from the statute's requirements.

133.   At all relevant times, ORC Ann. 4111.02 has provided:

> Every employer, as defined in Section 34a of Article II, Ohio Constitution, shall pay each of the employer's employees at a wage rate of not less than the wage rate specified in Section 34a of Article II, Ohio Constitution.

134.   At all relevant times, ORC Ann. 4111.03(A) has provided:

> [A]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended.

135.   In many weeks, Plaintiff Abdelhak and other Rule 23 Ohio Class members worked over forty (40) hours.

136.   Defendant violated the OMFWSA by regularly and repeatedly failing to compensation Plaintiff Abdelhak and the Rule 23 Ohio Class for the time spent on the work activities described in this Complaint.

137.   As a result of Defendant's violations of the ORC Ann. 4111.03(A), Plaintiff Abdelhak and the Rule 23 Ohio Class members are entitled to recover unpaid overtime wages dating three (3) years back, *see* ORC Ann. 4111.14(K), plus

an additional amount in liquidated damages equal to an additional two times the amount of the back wages, reasonable attorneys' fees, and costs of this action, pursuant to ORC Ann. 4111.14(J).

## COUNT IV
### (Rule 23 Ohio Class Action)
### VIOLATIONS OF THE OHIO PROMPT PAY ACT, ORC Ann. 4113.15.
### (Brought by Plaintiff Brittney Abdelhak)

138.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

139.   At all times relevant, Plaintiff Abdelhak and the Rule 23 Ohio Class members were employed by Defendant within the meaning of the Ohio Prompt Pay Act, and were not exempt from the statute's requirements.

140.   At all relevant times, ORC Ann 4113.15 has provided:

> Every employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month. If at any time of payment an employee is absent from the employee's regular place of labor and does not receive payment of wages through an authorized representative, such person shall be entitled to said payment at any time thereafter upon demand upon the proper paymaster at the place where such wages are usually paid and where such pay is due. This section does not prohibit the daily or weekly payment of wages. The use of a longer time lapse that is customary to a given trade, profession or occupation, or establishment of a different time lapse by written contract or by operation of law.

141.   Defendant violated ORC Ann. 4113.15 by failing to pay Plaintiff

33

Abdelhak and other Rule 23 Ohio Class members for the time spent on the work activities described in this Complaint.

142.   As a result of Defendant's violations of the Ohio Prompt Pay Act, Plaintiff Abdelhak and the Rule 23 Ohio Class members are entitled to recover unpaid wages dating two (2) years back, see ORC 2305.11(A), plus an additional equal amount in liquated damages, reasonable attorneys' fees, and costs of this action, pursuant to ORC Ann. 4113.15(B).

## COUNT V
## BREACH OF CONTRACT

143.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

144.   Defendant had binding and valid contracts with Plaintiffs to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs performed on behalf of Defendant.

145.   Plaintiffs earned pre-established hourly rates in excess of $21 per hour.

146.   Plaintiffs accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre-, mid-, and post-shift work activities, described herein.

147.   By not paying Plaintiffs the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiffs.

148.   Plaintiffs' remedies under the FLSA are inadequate in this case to the

extent Defendant paid Plaintiffs more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

149.   Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

150.   As a direct and proximate result of Defendant's contractual breach, Plaintiffs were damaged in an amount to be determined at trial.

**COUNT VI**
**UNJUST ENRICHMENT/QUANTUM MERUIT**

151.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

152.   Plaintiffs and Defendant made binding and valid agreements whereby Defendant was obligated to pay each Plaintiff for each hour worked at a pre-established hourly rate in consideration for the work Plaintiffs performed for Defendant.

153.   Plaintiffs accepted the terms of Defendant's promises under the agreement by performing their duties each shift including the unpaid work activities described herein.

154.   Defendant accepted and retained the benefits conferred upon them by Plaintiffs.

155.   By not paying Plaintiffs the agreed upon hourly wage (i.e., the value of

services) for all work performed, Defendant was unjustly enriched.

156.   Plaintiffs' remedies under the FLSA may be inadequate to the extent Defendant paid more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

157.   As a direct and proximate result of Defendant's unlawful actions, Plaintiffs are entitled to damages equal to the amount Defendant was unjustly enriched at Plaintiffs' expense, plus an award of pre- and post-judgment interest at the applicable legal rate.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief:

A. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

B. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and contact information for all proposed Collective members, and authorizing Plaintiffs to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

C. Certifying this action as a class action (for the Rule 23 Ohio Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Abdelhak's claims under the OMWSA and OPPA (Counts III and IV);

D. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' common law claims (Counts V and VI);

E. Designating Plaintiff Parkerson as the representative of the FLSA Collective action, and the Rule 23 Nationwide Class, and undersigned

counsel as Class/Collective counsel for the same;

F.  Designating Plaintiff Abdelhak as the representative of the Rule 23 Ohio Class, and undersigned counsel as Class counsel for the same;

G.  Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

H.  Declaring Defendant's violations of the FLSA were willful;

I.  Declaring Defendant violated ORC Ann. 4111.02 and that said violations were intentional, willfully oppressive, fraudulent, and malicious;

J.  Declaring Defendant violated ORC Ann. 4113.15 and that said violations were intentional, willfully oppressive, fraudulent, and malicious;

K.  Declaring Defendant breached its contracts with Plaintiffs failing to pay Plaintiffs for each hour they worked at a pre-established (contractual) hourly rate;

L.  Declaring Defendant was unjustly enriched through its failure to pay Plaintiffs and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

M. Granting judgment in favor of Plaintiffs and the proposed Collective members, the Rule 23 Ohio Class, and the Rule 23 Nationwide Class, as against Defendant and awarding Plaintiffs and the proposed Collective members, the Rule 23 Ohio Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated damages available by law;

N.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute; and

O.  Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, Brittney Abdelhak and Britney Parkerson, individually and on

behalf of all others similarly situated, by and through their attorneys, hereby demand

37

a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the

court rules and statutes made and provided with respect to the above entitled cause.


Dated:  October 24, 2022                              Respectfully Submitted,

                                                      */s/ Jesse L. Young*
                                                      Kevin J. Stoops (P64371)
                                                      Jesse L. Young (P72614)
                                                      Albert J. Asciutto (P82822)
                                                      SOMMERS SCHWARTZ, P.C.
                                                      One Towne Square, Suite 1700
                                                      Southfield, Michigan 48076
                                                      248-355-0300
                                                      kstoops@sommerspc.com
                                                      jyoung@sommerspc.com
                                                      aasciutto@sommerspc.com